OPINION OF THE COURT
Joseph Rosenzweig, J.
This is a motion and cross motion for summary judgment. The matter involves a sum of money that plaintiff claims was wrongfully paid over by Queens County Savings Bank (the Bank) to her ex-husband from their joint bank account. Specifically, the plaintiff seeks an order directing the Bank to credit the account with the sum withdrawn and to place a hold on the account “pending an order of a court of competent jurisdiction”, although no pending action is indicated in the moving papers.
Both parties agree as to the facts. However, the circum *725 stances of the dispute are unusual and present at least one novel question for this court to determine.
During their marriage, Annette (also known as Anna Maria) Goldfeder and Perry Goldfeder maintained a joint bank account at Queens County Savings Bank, payable to either or the survivor. When marital difficulties arose, Perry Goldfeder placed a stop order on the account. The terms of the order, which were printed on the bank’s form, provided that the stop payment would “remain in force until both parties appear at the bank in person to sign a release, or to sign a draft to close the account, or a certified copy of a Court Order is served on the bank ordering the disposition of the account.” Below the signature, place was provided for the joint tenants to sign a statement canceling the stop payment, but this portion was never used.
The parties subsequently executed a separation agreement that provided among other things that “the wife shall transfer to the husband all her right, title and interest in the joint bank account held by the parties.” This separation agreement was later incorporated by reference, but not merged into, a divorce decree entered in Queens County Supreme Court.
Perry Goldfeder made two attempts to withdraw the funds. The first, based solely on the separation agreement, was unsuccessful. On the second attempt, however, he also presented a certified copy of the judgment of divorce incorporating the agreement. Mr. Goldfeder did not have the passbook. Instead, he signed an affidavit on the bank’s stationery to the effect that the passbook was not lost, but was in the possession of his wife who refused to surrender it to him. The Bank then accepted the divorce decree as sufficient authority to release the funds and paid the sum of $5,413.32 then on deposit to Mr. Goldfeder.
The first question before this court is whether it was proper under the law 'and the terms of the stop payment order for the bank to have released the funds to the plaintiff’s ex-husband. We believe that it was not.
Subdivision 5 of section 239 of the Banking Law provides that notice to a savings bank is not effectual to cause the bank to recognize an adverse claim unless the adverse claimant procures a “restraining order, injunction or other *726 appropriate process against such savings bank” in an action in which the depositor is made a party, or posts a bond to indemnify the bank. The purpose of this section is to protect the bank against the hazards of double liability where there are adverse claimants. (Ciriello v Eastchester Sav. Bank, 74 Misc 2d 425.) It should be noted, however, that in affording this protection to the bank, the statute thereby also establishes the procedure for an adverse claimant to oblige the bank to recognize his claim and to assume liability for improper payments.
Before a matrimonial hold was placed on the Goldfeder account, either the plaintiff or her husband could have withdrawn the entire amount on deposit. When it elected to stop payments from the account, the Bank recognized the existence and the adverse claims involved and waived the protection it had under subdivision' 5 of section 239 of the Banking Law. It also gave assurances to the joint tenants that their rights would be protected without either one having to resort to the statutory procedures set forth in subdivision 5 of section 239, since the hold stated that no withdrawal would be permitted unless both parties appeared at the Bank or a court ordered the disposition of the account. In effect, the Bank substituted its own procedure and assumed liability for payments not made pursuant to it. The plaintiff, therefore, was justified in relying on the Bank’s assurances.
Although by the terms of their separation Mrs. Goldfeder agreed to turn over the joint bank account to her husband, it is clear that she did not actually do so. Neither her reasons nor her rights under that agreement are before this court. As far as this defendant is concerned, the plaintiff simply did not appear with her ex-husband to withdraw the funds. In fact, she signaled her nonagreement to the transaction by refusing to surrender the passbook to him.
Thus, the Bank can escape liability for paying over the funds only if it can be said that the divorce decree itself was a court order “ordering the disposition of the account” within the meaning of the stop payment order. We believe that it was not. The decree contains absolutely no direction to the Bank. As to the separation agreement provisions, *727 they are merely an agreement to perform in futuro, and the Bank was on notice that plaintiff was refusing to turn over the account.
By incorporating the separation agreement without merging it, the granting court accepted a private agreement between the parties. That court also specifically retained enforcement jurisdiction concurrently with the Family Court. Apparently, neither Annette nor Perry Goldfeder have thus far brought enforcement proceedings, and no court order has issued either directing the plaintiff to turn over the account to her ex-husband or directing the Bank to release the funds on deposit to one of the joint tenants. This court is of the opinion that such an order was required for the Bank to act and therefore the Bank is liable to the plaintiff.
The second question before the court is the extent of the Bank’s liability. Before the stop payment was ordered, each of the depositors, as a joint tenant, was entitled to the entire amount on deposit. And we note that the joint tenancy itself was not altered or destroyed by the matrimonial hold, but continued until the account was wrongfully closed. Thus the Bank, having deprived the plaintiff of all her interest in the account, is liable to her for the full amount on deposit.
The remaining question to be determined is the kind of relief that can be granted to the plaintiff. The relief sought —an order directing the Bank to replenish the account and hold it pending further action — is equitable in nature and beyond the jurisdiction of this court.
Accordingly, plaintiff’s motion for summary judgment is granted, pursuant to CPLB, 3212 (subd [b]), in the amount of $5,413.32 plus interest from September 25,1979. Defendant’s motion for summary judgment is denied.